UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH NATHAN,

                Plaintiff/Appellee,

                              CIVIL CASE NO. 05-40234

v.

AMERICAN MEDICAL SECURITY, INC.,    HONORABLE PAUL V. GADOLA
                                                    U.S. DISTRICT COURT

                Defendant/Appellant.
_____/

## ORDER REVERSING THE JUDGMENT OF THE BANKRUPTCY COURT

On July 12, 2005, final judgment was rendered in this case by the Honorable Thomas J. Tucker of the United States Bankruptcy Court for the Eastern District of Michigan. Following the final judgment, Defendant/Appellant American Medical Security, Inc. ("AMS') appealed to this Court. Jurisdiction is proper pursuant to 28 U.S.C. § 158(a)(1). For the following reasons, the Court reverses the final judgment of the bankruptcy court.

**I.    Background**

Plaintiff/Appellee Kenneth Nathan ("Trustee") is the Trustee for Debtor Advanced Systems International ("Advanced Systems") which began bankruptcy proceedings on May 30, 2002. Before filing for bankruptcy, Advanced Systems had a group health insurance policy with Defendant AMS. As required by the insurance policy, Advanced Systems made monthly payments to AMS from July 1998 through May 2002, the month that Advanced Systems filed for bankruptcy. Although monthly payments were due on the first of the month, AMS had a 31-day grace period, as set out in the terms of the insurance policy. Because of the grace period, 31 days were provided after the due date to

make the monthly payment, during which time the insurance coverage remained in effect. If a payment had not been made by the end of the grace period, the insurance coverage would cease. At trial, an AMS employee, Mary Janssen, testified that AMS had an internal company policy, not expressed in the actual terms of the insurance policy, of allowing an additional five days of grace period after the 31 days for mailing time, before terminating any insurance coverage.

After Advanced Systems began bankruptcy proceedings at the end of May 2002, Kenneth Nathan was appointed as Trustee. The Trustee then brought an action against AMS under 11 U.S.C. § 547, in order to recover the last three insurance payments made by Advanced Systems to AMS in March, April, and May of 2002 before bankruptcy. The three payments consist of the following:

       1. A wire transfer of $15,212.00 on March 26, 2002;

       2. A check for $8,797.34 on April 23, 2002;

       3. A wire transfer of $11,798.38 on May 22, 2002.

The Trustee argued that the three payments could be recovered as they were avoidable preferences, while AMS argued that it was entitled to the payments because they were not avoidable.

On July 5, 2005, trial was held before Bankruptcy Judge Thomas Tucker. The bankruptcy court and the parties to the case all acknowledge that the payments are not avoidable and not recoverable by the Trustee if they fall under the ordinary course of business exception, found in section 547(c)(2) of the Bankruptcy Code. This controlling rule of law states that the exception applies if the transfer was:

>   (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>   (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>   (C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).[1]

Only the last two elements are at issue, and at the bankruptcy trial, the burden rested on AMS to prove these two elements in order to demonstrate that the ordinary course of business exception applied. First, under subpart (B) called the "subjective prong" of the test, AMS was required to show that the payments were made in the ordinary course of business between Advanced Systems and AMS. Second, under subpart (C) called the "objective prong" of the test, AMS was required to show that the payments were made according to ordinary business terms. In the final judgment issued on July 12, 2005, the bankruptcy court found that AMS had failed to demonstrate both prongs of the test, and ruled that the payments were avoidable preferences and thus could be recovered by Trustee. AMS appealed to this court, claiming that the bankruptcy court erred in its judgment in finding that AMS failed to show both prongs of the test.

AMS also appealed a second smaller issue: that the bankruptcy court erred in excluding the testimony of Carl Moore, Advanced Systems's insurance agent. Carl Moore was not listed as an expert witness in the Joint Final Pre-Trial Order, and thus, his testimony as an expert was properly excluded by the bankruptcy judge. AMS argues, however, that the bankruptcy court erred in excluding Moore's factual testimony because it was not expert opinion, but rather testimony based

---

[1] Although this portion of the Bankruptcy Code was later amended on April 20, 2005, it is the old statute, as stated here, that is applicable in this case.

on his own personal knowledge.

### III.     Legal Standard

"District courts review a bankruptcy court's conclusions of law de novo." *In re McNamara*, 275 B.R. 832, 835 (E.D. Mich. 2002) (Gadola, J.). "A district court will not disturb a bankruptcy court's findings of fact, however, unless those findings were clearly erroneous." *Id.* "A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Carled, Inc.*, 91 F.3d 811, 813 (6th Cir. 1996) (citing *In re Fred Hawes Org., Inc.*, 957 F.2d 239, 242 (6th Cir. 1992)).

### IV.     The Ordinary Course of Business Exception

#### 1.     The "Subjective Prong"

The bankruptcy court found that AMS had failed to prove the first prong of the test by not demonstrating that the monthly payments from Advanced Systems to AMS were "made in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(B). "With respect to subsection (B), the subjective component, the courts generally eschew precise legal tests and instead engage in a fact-specific analysis. . . . In doing so, they examine several factors, 'including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made.'" *In re Fred Hawes Organization, Inc.*, 957 F.2d 239, 244 (6th Cir. 1992) (quoting *In re Yurika Foods Corp.*, 888 F.2d 42, 45 (6th Cir. 1989)).

In its ruling, the bankruptcy court looked at only 15 months of the past course of dealing between Advanced Systems and AMS. The bankruptcy judge ruled that because several of the monthly payments in the 15-month time period "departed significantly" from a pattern of making

4

payments during the grace period, then AMS had failed its burden of showing that the disputed March, April, and May 2002 payments were made in the ordinary course of business. Bankruptcy Trial Transcript, pp. 167-70.

The bankruptcy judge made a clear error in ruling that the final three payments were not made in the ordinary course of business. The bankruptcy judge failed to consider the entire four-year relationship between Advanced Systems and the terms of the agreement between the parties. When looking beyond the 15 months considered by the bankruptcy court, and instead when considering the entire four-year relationship between Advanced Systems and AMS, there is no indication that the final three payments do not correspond to a general pattern of payment. During the entire 4-year relationship, almost every payment was made during the 31-day grace period. Two of the payments that were made after 31 days, the February and March 2001 payments which were deposited on the 35th and 36th days respectively, were still made within the additional five-day mailing period. For all of these payments, including those for February and March 2001, the insurance coverage remained in force. This is consistent with the agreement between the parties and the course of dealings, which allowed for making payments during the 31-day grace period and the additional five days for mailing. The only other time that a payment was made after the 31-day grace period was in May 2001, made 42 days after the due date. The result of this late payment was the automatic termination of the insurance coverage. The insurance coverage was later reinstated only when the July 2001 payment was prepaid. This termination of the insurance coverage is also completely consistent with the agreement between the parties.

Similarly to almost every other payment during the business relationship between Advanced

Systems and AMS, the final three payments during March, April, and May 2002 were made during the grace period. There is no dispute that these three final payments were made for the purpose of continuing the insurance policy. During this time, Advanced Systems did not make any extra payments nor did it make any prepayments. By making the final three payments, Advanced Systems did not do anything unusual to disgorge funds just before filing for bankruptcy. In fact, it is clear that the final three payments were made according to the prior practice and course of dealings between the parties for the express purpose of maintaining Advanced Systems' insurance policy which was first acquired four years previously. Because the final three payments to AMS were made according to the agreement and practice between the parties, the final three payments were "made in the ordinary course of business." 11 U.S.C. § 547(c)(2)(B). Therefore, the bankruptcy judge clearly erred in ruling that AMS had failed to show that the disputed payments satisfied the "subjective prong."

### 2. The "Objective Prong"

The bankruptcy court also found that AMS had failed to prove the second prong of the test by not demonstrating that the monthly payments from Advanced Systems to AMS during a grace period were "according to ordinary business terms." 11 U.S.C. § 547(c)(2)(C). "[O]rdinary business terms within the meaning of Section 547(c)(2)(C), means that the transaction was not so unusual as to render it an aberration in the relevant industry." *In re Carled*, 91 F.3d at 818. At trial, AMS provided evidence that its past dealing with Advanced Systems was one where Advanced Systems regularly and ordinarily made payments during the grace period following the due date. AMS also provided evidence that some of its other customers similarly made regular payments

6

during their grace period. AMS further showed that the 31-day grace period is a policy required by Michigan law.

The bankruptcy court, however, found that this evidence by AMS was insufficient to prove the "objective prong," stating that it was insufficient to simply show the particular history of dealing between Advanced Systems and AMS or to show a similar pattern of dealing with AMS's other customers. Bankruptcy Trial Transcript, p. 172. The bankruptcy court stated that the *In re Carled* case required a showing that payment during the grace period was a standard practice for other members of the industry, and that AMS had failed to make that showing. Bankruptcy Trial Transcript, p. 173. The bankruptcy court did not place any weight on the fact that a grace period was required in Michigan by law, or on the "vague" testimony of Mary Janssen who testified that she had worked in the past with a company that had a similar grace period policy. Bankruptcy Trial Transcript, pp. 174-77.

The bankruptcy court committed clear error in ruling that AMS had not established the third element, or the "objective prong," of the ordinary course of business exception. AMS provided evidence that payment during a grace period was a regular practice that it followed with Advanced Systems and with its other customers. Janssen testified that she had worked at another company where this practice was also followed. AMS demonstrated that the practice of making payment during a grace period was a practice required by law in Michigan. All this evidence supports the finding that the practice was not one "so unusual as to render it an aberration in the relevant industry." *In re Carled*, 91 F.3d at 818. Therefore, the bankruptcy court clearly erred in ruling that AMS had failed to show that the final three payments were made "according to ordinary business

during their grace period. AMS further showed that the 31-day grace period is a policy required by Michigan law.

The bankruptcy court, however, found that this evidence by AMS was insufficient to prove the "objective prong," stating that it was insufficient to simply show the particular history of dealing between Advanced Systems and AMS or to show a similar pattern of dealing with AMS's other customers. Bankruptcy Trial Transcript, p. 172. The bankruptcy court stated that the *In re Carled* case required a showing that payment during the grace period was a standard practice for other members of the industry, and that AMS had failed to make that showing. Bankruptcy Trial Transcript, p. 173. The bankruptcy court did not place any weight on the fact that a grace period was required in Michigan by law, or on the "vague" testimony of Mary Janssen who testified that she had worked in the past with a company that had a similar grace period policy. Bankruptcy Trial Transcript, pp. 174-77.

The bankruptcy court committed clear error in ruling that AMS had not established the third element, or the "objective prong," of the ordinary course of business exception. AMS provided evidence that payment during a grace period was a regular practice that it followed with Advanced Systems and with its other customers. Janssen testified that she had worked at another company where this practice was also followed. AMS demonstrated that the practice of making payment during a grace period was a practice required by law in Michigan. All this evidence supports the finding that the practice was not one "so unusual as to render it an aberration in the relevant industry." *In re Carled*, 91 F.3d at 818. Therefore, the bankruptcy court clearly erred in ruling that AMS had failed to show that the final three payments were made "according to ordinary business

terms," 11 U.S.C. § 547(c)(2)(C).

### V.     Conclusion

Accordingly, for the reasons given above, the Court rules that the findings of the bankruptcy court were clearly erroneous and that the final three payments of March, April, and May 2002 fall under the ordinary course of business exception.  Consequently, the question of the admissibility of Moore's testimony is moot, and the Court thus declines to consider its merits.

**IT IS HEREBY ORDERED** that the judgment of the bankruptcy court is **REVERSED**.

**SO ORDERED.**

Dated:   January 25, 2006                                s/Paul V. Gadola
                                                                              HONORABLE PAUL V. GADOLA
                                                                              UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   January 26, 2006   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
   Leif K. Anderson; Susanna C. Brennan; Lauren J. McGill; Troy C. Otto     , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                                        .

                                                                              s/Ruth A. Brissaud
                                                                              Ruth A. Brissaud, Case Manager
                                                                              (810) 341-7845